Good morning, and may it please the Court. My name is Philip Clotius, and I represent the appellants, Utopia Evans and six former NFL players. I'd like at this point to reserve four minutes for my rebuttal. All right, and you'll be making all the arguments? Correct, Your Honor. Thank you. Your Honors, the District Court based its holding on the wrong injury and on the wrong defendant. The opinion is therefore inconsistent with the Ninth Circuit's Injury Discovery Rule. I'm having trouble understanding the injury a little bit myself, so maybe you can tell me specifically. Because you say that you did not become aware that defendants cause injuries for your players until at the earliest March of 2014? Correct, Your Honor. All right. I guess I'd like to know what injuries are you specifically referring to, and why was that the earliest that you became aware of it? Your Honor, the question you ask is the heart of the matter, because we think the district court misconstrued the injury also. The injury we're alleging is not the pressuring to play football or the receipt of the drugs. Those two things on their face are legitimate business concerns. They're not a harm. They're not a wrong. But there was an injury that the players had, as I understand it, and then you're suggesting after they had the injury, then there was the pressure, if you will, to prematurely get out and play, right? And then that caused them to then prematurely retire. Your Honor, with all respect, the word injury is being used in a lot of different contexts. Well, all I'm trying to figure out is there is, I mean, there is some physical injury at the beginning. Correct. That's all I'm trying to say. There's some physical injury in the beginning, and then as I understand it, then they got this injury, but then they were pressured to returning before these physical injuries were, as I understand it, taken care of, and that that or completely healed, let's say, and then that caused them to retire prematurely. Isn't that your allegation? In part, Your Honor. When you play football, you're going to get physically hurt. Yes. Physical injuries are part of the game. That's part of the normal wear and tear. That's kind of a duh argument. I mean, anyone that claims that they, I mean, how many, you know, every time they go out and play a game, that could be the last game that they ever play. Correct. And it's kind of a duh thing as well that everyone knows that you aren't going to be playing football when you're 60 years old, or you don't get to be like a judge where they dump you in your seat and you can, you know, continue to play as far as that goes. So there's certain things that are inherent to an athlete's sport. It's going to be shorter. They have a risk of injury. And physical injury, there isn't anyone that knows a physical injury better than the person that happened to, right? Correct. I'm just trying to figure out what injuries you're referring. I'm back to it. What injuries are you referring to? This is your opportunity. They seem conclusory in nature. And so tell me if you can, in the best way possible, specifically your theory here. Injury is not the normal wear and tear that occurs in football. The injury is the premature ending of the careers because of the illegal use of medications and the fraudulent cover-up of those illegal medications. Which you apparently allege occurred during the time and while they were suffering their injuries, their physical injuries. Correct. Okay. So I guess I'm just trying to figure out, you know, how the statute of limitations doesn't preclude you from going forward. Only they didn't know they were harmed, right? The plaintiffs had no clue that any wrongful conduct was going on. They didn't know they were harmed and they didn't know the defendant had done wrongful actions. Well, they got it. They had it. They were getting pills that have unmarked. They're handed pills in envelopes. I'm sorry. You tie that to that the limitations did not begin to run until the plaintiffs discovered the fraud, the way you've pled this. That's the language of four different cases in the Ninth Circuit. Okay. I'm just trying to understand. What's the fraud here and when did you find out about it? They're not telling these people what the side effects are. They're not telling them about the dangers of cocktailing. That's the mixing of the drugs. They're not telling them about the name of the medication half the time. They're not giving dosage. Your Honor, when you buy Tylenol, you'll see a little thing on the box giving you warnings that are mandated by Federal and State law. And you say that your clients did not become aware of this until March of 2014. Correct, Your Honor. All right. And can you show me where you allege in your amended complaint that the plaintiffs only became aware of the defendant's fraud at the earliest in March of 2014? Your Honor, we allege it throughout the complaint. I know. But you just say that date. But what was it that happened in March of 2014 to make you aware? Because there's nothing that says that there. And 2014, March of 2014, is coincidentally for you, it puts you within the four-year statute of limitations. But you don't tell us what happened. Your Honor, about that time, a lawsuit was filed in Dent that got publicized a lot. That publication, in the words of the Ninth Circuit, was notorious and numerous. That would have put all NFL players on notice at that point in time when the lawsuit got filed. That lawsuit was preceded by discussions in the end of probably 2013 among some NFL alumni about all these drugs. And they started to put together about all the injuries they were feeling and all the drugs. In fairness, Your Honor, it started with physical injuries. It started with the physical injuries. Right. And that's what our law says, that it begins with the injuries, not the fraud. And I think you're trying to tie it to the fraud. Your Honor. And I'm having just some, trying to figure out what, how that would work in light of our case law and in light of Rotella, the Supreme Court case law. Your Honor, the Supreme Court case of Rotella v. Wood supports our argument. Supreme Court, Rotella v. Wood says explicitly, quoted by the district court, although we think misapplied, that statute of limitations doesn't run until the defendant knows he's been harmed and knows that the defendant caused the injury. They didn't know either one here. They thought that what was being given to them and what had happened to them was the normal business practice. They thought it was just perfectly fine. They had no sense that they were being damaged by an illegal distribution of the drugs. They didn't know they were illegal. They didn't know. They trusted their doctors, Your Honor. They trusted their coaches. They just thought this was normal. I know it sounds hard to believe, but it's true. So the lawsuit's what put them on notice. There were discussions among certain members in the NFL alumni community where people started to suddenly talk about these drugs. Now, again, Your Honor, when they're players, they're in their 20s. They're kids. They're young. As they got older, people started to talk about it and said, oh, what's going on with all these drugs? And that's how it started. Well, just a minute. Let's re-back up just a minute. It seems to me that they had the physical injury. Then they were pressured, I guess, into returning, or at least that's what the complaint says, before they were completely healed. Then those injuries and having been forced to go back before they were completely healed  Correct, Your Honor. and lose out on future business or future opportunities, then it seems to me that if I take that, why isn't it the date on which the retirement happened, which is the date? Because the retirement I mean, it was a premature retirement. They know it's premature retirement. They have then every notice of opportunity to do something about that and to say something and to think of why we're getting it premature. What was the situation? So why doesn't the statute run when the retirement happens? Your Honor, Judge Callahan answered the question. No, she didn't. But they all know they're going to You're going to answer the question. And frankly, I haven't heard it yet. They all know they're not going to play until they're 50. They all know that this is a limited career world. They had no idea that the termination was premature. Well, but they thought it was premature. You allege in your complaint that they had the injury, that they were forced to return before the injuries were completely healed, that this caused them to retire prematurely. Are you saying they didn't know that they had They didn't know it was premature. Your Honor, let me give you an example that may clarify. Suppose you sprain your ankle, which they all do. The normal cure is going to be take three or four weeks off, rehabilitate it. Maybe they give you a pain pill because your ankle's in pain. At that point, your ankle's going to be normal. You're going to resume a normal life. In the NFL, when you sprain your ankle, they shoot you with cortisone, they give you pain pills, and they tell you to play 15 more games. Are you suggesting that the injuries, you did not know that these injuries led to an allegedly premature retirement? They didn't know the retirement was premature, correct. That's what you're suggesting? Yes. That's the whole complaint. Rotella doesn't say that it's when they discovered the injuries and that defendants caused their injuries. In fact, it says at 528 U.S.C. and 555, quote, we have been at pains to explain that discovery of the injury, not discovery of the other elements of the claim, is what starts the clock. Correct. Your Honor, so Rotella is dealing with the injury pattern rule and discovery rule. That's – that was a rule that said the clock didn't start until you knew the details of the RICO claim. That's not what we're saying here. They didn't have to know about the criminal enterprise and the conspiracy and the predicate acts. They didn't have to know all that to start the clock. We got it. But Rotella does say specifically the clock doesn't start until the defendant knows he's been hurt and who has inflicted the injury. They had no idea that the teams were doing this. If they knew anybody was inflicting the injury, they thought it was the doctors. They had no idea that the teams were telling the doctors to illegally medicate them. They had no idea that the teams were responsible for the exacerbated use of drugs. But just a second. If I take your language exact, why weren't they on constructive notice when they, as alleged – as they alleged, they were forced by the doctors or the teams to go back out on the field? Why isn't that constructive notice? Your Honor, these are 20-year-olds. I know who they are. I know – and we've got more than just 20-year-olds in every case. These are not the only 20-year-olds in the world. But we're interpreting constructive notice here. And if you're suggesting that they knew that they were being forced onto the field too early after their injury, I don't know why they're not on constructive notice of their claim at that point. Because they have no sense of the wrong. They have no sense of being harmed. Your Honor, conflict versus – You're saying that the clock started when they discovered the fraud. And I'm not sure that that's what the cases say. And that doesn't really make sense. I have, Your Honor, four specific cases, beneficial life, that say it is not these newer should-have-known-of-the-injury, but newer should-have-known-of-the-fraud. Beneficial standards at 275, Volk at 1415, Pinkay at 1110, and living designs at 365. So how does this argument go with your equitable tolling argument? Because you make that argument as well, and I'm wondering what your legal support is for the argument that passive conduct of defendants is deemed fraudulent concealment and thus equitably tolled the statute of limitations. Your Honor, equitable tolling goes to the issue of were they hiding the existence of the cause of action. Equitable tolling is like the injury pattern discovery rule. It deals with the details of the cause of action. Fraud in the original injury discovery rule is about when the statute starts to run. So in equitable concealment ---- But even if the passive alleged conduct supports a claim of fraudulent concealment, what are the allegations that plaintiffs did not know or should not have known of the passive conduct? Your Honor, equitable tolling usually takes affirmative fraud, and we do allege affirmative extra fraud. Answering questions about side effects untruthfully, statements about the NFL gives the best health care in the world, telling people that broken legs are just sprains so there are affirmative acts in addition to just passive acts that support the equitable tolling doctrine. Do you want to save some time for rebuttal? Oh, go ahead. One more question. Okay, go ahead. If I look at living designs, for instance, because it seems to me that if you have an argument to make, it's out of living designs, but it seems to me living designs says the limitation, I'm quoting, the limitations period for civil RICO actions begins to run when a plaintiff knows or should know of the injury which is the basis for the action. Now, why can't we find then that living designs was simply applying the injury discovery rule as described by the Supreme Court and really applying it the way it ought to be applied? You lose. That would be wrong, Your Honor. That's what I asked. Why? The Ninth Circuit cases are clear that you must know the harm and you must know the wrongful conduct of the defendant. Living designs says when a plaintiff knows or should know of the injury. Should know means you have to put yourself... In other words, constructive notice. I understand. In other words, we know we have an injury. We know we're being forced out on the field before the injury is done and we're out there doing it and we're on constructive. We, therefore, have constructive notice of the problem and we did nothing. We don't have constructive notice of the harm. The harm is the wrongful conduct, Your Honor. It's not simply the wear and tear of normal NFL existence. Okay. What do we have in your complaint to show what steps the plaintiff took to investigate these injuries? We talk in the complaint. We mentioned... What? Tell me. Give me some good... Because I don't find anything in your complaint that talks about what the plaintiffs do to investigate their injury. Your Honor... And frankly, I don't think you've got a fraudulent concealment even if we give you all of this unless there's some allegations about the diligence in the attempt to uncover the scheme. Your Honor, on page 21 of the complaint in paragraph 107, we specifically allege that plaintiffs asked about side effects and were lied to about the side effects. So that's the best you have? Yes, Your Honor. Okay. That's what I want to know. Thank you. Okay. You're in overtime, but I'll give you two minutes rebuttal. Thank you, Your Honor. Okay. Thanks. Thank you. Good morning. Good morning. May it please the Court, my name is Greg Levy. I will be giving the entire argument on behalf of the NFL appellees. Can I just start where we left off here? Of course. The living design case, if you could talk to me about that. I think it may be distinguishable. I'd like to hear from you why it is. The cases that a colleague across the aisle cited, a beneficial, were all, I think, pre-Rotella. I think living design is post-Rotella. So give me your best argument regarding living design. In living designs, Your Honor, the plaintiffs alleged that they had been fraudulently induced to accept less in settlement of a lawsuit than they should have been, less than their claim was worth. And that was because the defendant in that case, DuPont, had withheld crucial information and discovery. The Ninth Circuit began its limitation analysis by stating, as the Court noted earlier, the rule from Rotella, Rotella being the central controlling case in this matter. The Court said, the limitations for civil RICO actions begin to run when a plaintiff knows or should know of the injury which is the basis for the action. And then the Court went on to find a triable issue of fact on the limitations issue, not because of a dispute over when plaintiffs learned the cause of their injury, but rather because of a dispute over when plaintiffs learned that they had been injured at all. It wasn't until plaintiffs knew of the fraud in living design that they learned that they had been injured. So in my view, Your Honor, living designs is entirely consistent with Rotella. It applied the injury discovery rule. And it resulted from the unusual situation where, unless the plaintiff knew of the scheme, of the fraud, he didn't know that he had been injured. The situation here is fundamentally different, as the panel has recognized. In each of these instances, the plaintiff knew that he had, that his career had terminated. His business interests had ended. And in their view, the business interests had ended prematurely. And I can take just an example, and we cite these, we cite examples in our brief at page 7, but Jerry Wunsch, one of the players, alleged that he had suffered ankle injuries and that after the last one, a team doctor told him that his ankles were so damaged that he couldn't return to play. And then a few weeks later, he was cut by the Seattle Seahawks, the team that employed him. His career ended in 2004. But there was, at that point, Mr. Wunsch knew that his career had ended, that his business, if you will, was over. He knew that there was an injury. And he waited 10 years to file his claim. Both, that fails both under the injury discovery rule and the governing test of Rotella. But also on fraudulent concealment, there's no suggestion that in the subsequent 2 and 10 years, he made inquiries of other doctors about the nature of his treatment during the time he was employed by the Seahawks, or even that at the time, he took advantage of the provisions that were available to him in the collective bargaining agreement to seek a second opinion. And what, is there anything that we should make of the argument or the claim that plaintiffs make that, but they weren't told about the harm of Tylenol or some of the drugs they were given and all of that? You know, Your Honor, there are two respects in which plaintiffs were put on notice of their, of the injury here. I mean, the first is the premature end of their career. But in addition, the complaint itself, on the face of the complaint, plaintiffs allege all of the facts upon which they would rely to establish the predicate acts to support a RICO claim. They, those examples include allegations that the plaintiffs had received pills in unmarked containers, without prescriptions, from athletic trainers rather than doctors, in airplanes, or in visiting team locker rooms, without disclosure of the, of the underlying, of any risk. Those were facts of the case. I'm just wondering if the plaintiffs have a colorable argument that defendants' passive conduct is deemed fraudulent concealment because of the doctor-patient fiduciary duty between plaintiffs and their team doctors or trainers. So why isn't, I'm trying to, you know, I'm trying to make the best argument for them on that point. Even if, even if they were to establish that argument, the Court should go back to the points raised by you and by Judge Smith, that there are multiple requirements to allege fraudulent concealment. One has to allege affirmative acts by the, by the plaintiff, or excuse me, by the defendant. But in addition, the, the plaintiff has to allege that he was unaware of the underlying acts that formed the basis of his claim. And as I've indicated, on the state of the, on the face of the complaint, it's clear that the plaintiffs were aware of the acts that underlied their claims. And in addition, if I may, the plaintiffs have to allege due diligence to discover their claim. And there are no allegations of due diligence here. And that, Your Honor, is, is, is absolutely fatal to, to at least the fraudulent concealment allegations. That's right. There is something in living designs which worries me. I quoted the, the part of the language that says, the quote, the quote that you also quoted back to me about knows or should have known. But there's also a quote in living designs which worries me. It is, plaintiff's RICO claims accrued when plaintiffs had actual or constructive knowledge of DuPont's fraud. I understand, Your Honor. And what the problem is here is it seems to me that the plaintiff's claim is, though we knew that we were injured, though we knew we were forced out onto the field before we should have been, though we knew we retired, we really didn't know it was fraudulent until this case comes along. Well. And, and I guess, am I bound by that? Please respond. I'll offer several responses. One, you're not bound by that because of Rotella. Rotella is what dictates the outcome here. And living designs can be explained because, as I noted earlier, and I recognize that the Court used the word fraud. At the end of the day, I, I, I, I, I, I, I don't dispute that. And that's because in the circumstances presented there, the plaintiff couldn't know that he had been injured until he knew of the fraud. It's a situation where the plaintiff missed out on an opportunity because he was unaware of the discovery abuse or the discovery failure, and he couldn't know that he, he settled his claim for less than the claim was worth. It's, it's, it's the same situation as in Beneficial Standards, which is, which is before Rotella, but it suffers from the same flaw, because in Beneficial Standards that that was the case involving a kickback scheme, an employee kickback scheme, and the defendant, the plaintiff, the plaintiff wasn't in a position to know that he had been injured, that money had been effectively embezzled from him, until he learned of the fraud. And so when the Court in those circumstances uses the term fraud, while I would prefer the language to be more precise, and I would prefer that they use, that he use the word injury, he's referring to discovery of the injury, because the injury cannot be discovered until the fraud is identified. And both cases But following up on that, because it does seem, I'd just like to follow up on what Judge Smith just asked you, because you're correct that both the pre-and post-Rotella cases, this, our circuit has held that a plaintiff's civil legal claim does not begin to accrue until a plaintiff has actual or constructive knowledge of the fraud, focusing on the fraud, and it looks like our case law appears to define constructive knowledge as when a plaintiff has enough information to warrant an investigation which, if regionally diligent, would lead to discovery of the fraud. So how are you reconciling those cases? Well, let me start by saying that in Ben, let's focus on living designs, because it's post-Rotella. The language in that case is not as precise as I would like. I acknowledge, though, if you think about the analysis that I've just given you, it's apparent that what they're talking about is injury and not fraud. But those aren't the only cases decided by the Ninth Circuit since Rotella. Crown, Chevrolet, Pinke, all of those cases repeatedly make clear that the discovery of the injury is what triggers the starting of the clock for statute of limitations purposes. And if you look at living designs as well, it was a discovery of the injury there that triggered the statute of limitations. The fact that the injury was discovered at the same time as the fraud raises an interesting point for discussion between us. But it was discovery of the injury in all of those cases, Crown, Chevrolet, Pinke, living designs, and I'd go on to say beneficial standard, that were the issues that dictates the outcome here. In the end, you know, the case most carefully aligned with this one and most closely aligned with this one is Rotella itself. You know, in Rotella, Plaintiff's RICO claim was based on an allegation that as a result of a fraudulent conspiracy, he had received improper medical care, including confinement in a mental institution, for over a year. And he argued, as plaintiffs do here, that his medical treatment had been dictated by defendant's financial interests rather than by his medical needs. The parallels here are striking. And how did the Court – how did the Supreme Court address those issues? A unanimous Supreme Court held that the RICO limitations period begins to run no later than when the plaintiff learns of his injury. And then the Court affirmed application of the injury discovery rule, which focuses exclusively on when the plaintiff knows of his injury, and expressly rejected an injury and pattern discovery rule, under which the limitations period would begin to run only when the plaintiff knows of both his injury and the pattern of racketeering acts that may have caused it. And in reaching this decision, the Court analogized medical malpractice claims, recognizing that a person who received inadequate medical care is responsible for determining within the limitations period whether his treatment was malpractice. Here, Appellant's theory of causation rests on a similar assertion, that each had suffered injury the end of his football career due to deficient medical care. Accordingly, this case, which resembles Bratella so closely on the facts, fits snugly within the decision's letter, spirit, and rationale. And Appellant's never come to term with Ratella. They didn't even discuss Ratella in their reply brief, after we had devoted the bulk of our opposition brief to discussing that case and its progeny, including Chevrolet, Crown Chevrolet and Pinke. Let me look at this just a little bit differently, and I have one other question. I asked them what were their allegations about diligence in their attempt to uncover the scheme, and we got their best answer. In this particular situation, it seems to me that what they're suggesting is that they have injury, but their injury doesn't come until later. And what they're really suggesting is that it doesn't come until later, because what the NFL did is the NFL frustrated, if you will, their discovery of their injury by the fraudulent concealment thereof. Therefore, they were as diligent as they could be, but because the NFL was fraudulently concealing what was the reality of what they had, that was all they could do. What other allegations do they need to then allege if that's their claim? Two-part answer, Your Honor. First, allegations of fraudulent concealment need to be pled with particularity. They need to be precise and definite. We've cited authority for that in our brief. There is no allegation with particularity of fraudulent concealment here. Second, as I mentioned to Judge Callahan, in addition to alleging affirmative acts, if you will, to cover up the allegation, one must also allege that he is unaware of the facts that will underlie his claim, an argument that plaintiff no plaintiff can make here because the events all happened right in front of them, and they have to demonstrate due diligence. And there hasn't even been a suggestion here that in the 10 years following the or the 20 or 30 years, depending on the plaintiff, following the occurrence of their injury, that anyone went to another doctor or sought relief of any kind to determine whether or not the treatment they had received from the NFL club doctors was. Sotomayor, I see if they went to other doctors and then the NFL blocked giving them, they wouldn't give them records to medical records or things like that. Would something like that push them further, closer to the particularity that you're indicating on diligence? It might inch them closer, but, Your Honor, I can say with some confidence that there is no such allegation in the complaint. Well, I know it's not there in the complaint, but I'm just trying to say what kind of particularity are you talking about. I mean, they at least need to go to a doctor, you're saying, to start the ball rolling? I say they need to go to a doctor. They should have gone. That's an example of what they failed to do to support their due diligence claim. And all I was trying to do is, I mean, when I'm talking about fraudulent concealment, you have it just like I do. We've got two allegations we've got to make, but one of those allegations has to be about the diligence. And so the only response to their no allegation about diligence, really, is that because of the fraudulent concealment and the frustration thereof by the teams, they did all they could under the diligence, and that's all I'm having you respond to. Your Honor, I seems to me that would be their only allegation. There is no other allegation, Your Honor. If I may, for another 30 seconds, given the Court's last questions, I know I'm over time, but I should note that appellants do not allege here that the district court erred in not denying them or erred in denying them leave to amend their complaint. As Judge Alsop held, such a course would have been futile. And in that regard, I invite the Court's attention to the fact that as the record below demonstrates, more than 5 years before filing their RICO claim, each appellant, other than Evans, who passed away in the interim, filed a workers' compensation claim for the very same injuries asserted here, attributing those injuries to his club employers. So any suggestion that there might be an opportunity, that they should have an opportunity to read their or to replead their claims ought to be rejected. It would be futile to allow them to do so. All right. There don't appear to be additional questions. Thank you for your argument.  All right. The plaintiff has two minutes for rebuttal. Your Honor, I'd like to begin by simply correcting something my esteemed opponent mentioned. If you go to paragraph 114 of the complaint, there is a specific allegation regarding 745 medical records and how many of them never even mention the medications and never mention the dosage. So we do have evidence of fraud in the medical records in paragraph 114. Your Honors, all the cases are clear that the statute of limitations doesn't run under the injury discovery rule until you have two different things, knowledge of the harm and knowledge of the defendant's wrongful conduct. Now, sometimes they phrase it differently. Sometimes they say who inflicted the injury. Sometimes they say knowledge of the fraud. Compton v. Ide uses the word wrongful conduct. But they all require both. The district court here never looked at the second problem, never looked at whether they had knowledge, actual constructive knowledge, of the wrongful conduct of the defendant. At best, it's constructive knowledge of wrongful conduct by the doctors. We didn't sue the doctors. We sued the teams. We didn't sue the henchmen. We sued the people who started the enterprise, who profited from the enterprise, and who maintain the enterprise. Your Honor, every case cited from Rotella on down has something that showed knowledge of wrongful conduct by the defendant, either filing a prior lawsuit or being given a written annual report or something that revealed the fraud. That's what keys constructive notice. We have none of it here, Your Honor. There was no indication given to these players by anyone that the teams were, in fact, masterminding this and telling the doctors what to do, and that the doctors were not acting in the best interest of the players. For those reasons, Your Honor, we respectfully request that you reverse the decision of the district court and send us back. Thank you both for your helpful argument in this matter. This matter will stand submitted, and you will hear from us when we're ready to let you know.
judges: Callahan, N.R. Smith, Murguia